IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Marlene Abrams, | ) |
|     Plaintiff, | ) ) ) ) |
| v. | ) No. 19 CV 7934 |
| Andrew M. Saul, in his Official Capacity as the Commissioner of the Social Security Administration | ) ) ) ) ) ) |
|     Defendant. | ) |

MEMORANDUM OPINION AND ORDER

Petitioner Marlene Abrams has been an Administrative Law Judge ("ALJ") for the Social Security Administration (the "Agency") since June of 2009. Since April 12, 2016, she has been in "paid, non-duty status," Pet. at ¶ 11, meaning that she has not performed any work as an ALJ but has continued to receive her normal salary. The reason she was relieved of her duties is that after the Agency filed a complaint before the Merit Systems Protection Board (the "MSPB" or the "Board"), a Board-appointed ALJ held a thirteen-day hearing and issued an Initial Decision finding good cause to remove her from the ALJ position due to her "medical inability to perform her duties" and other performance issues. Abrams appealed the ALJ's Initial Decision by filing a

Petition for Review by the Board on July 18, 2016. But that petition has languished in the MSPB for over four years because the Board is unable to act in the absence of a quorum—which it apparently has not had since that time.

In November of 2019, Abrams received a "Notice of Proposed Indefinite Suspension" from the Agency's Deputy Chief ALJ. Pet., Exh. 1. The Notice summarized Abrams's performance issues and the proceedings culminating in the ALJ's Initial Decision. The Notice observed, "American taxpayers have paid you $609,841.60 for a job that Judge Metry, on behalf of the Board, determined you could not perform" and proposed moving Abrams to unpaid status pending the MSPB's final decision on her Petition for Review. *Id*. at 2-3. The Notice informed Abrams of her right to respond and set forth the manner and time for response.

Based on the foregoing facts, Abrams filed a petition for injunctive relief on December 3, 2019, seeking to restrain the Agency from suspending her and moving her to unpaid status. On December 30, 2019, Abrams filed a temporary restraining order, noticed for hearing in mid-February, essentially reiterating the facts in her petition. On March 4, 2020, the Agency moved to dismiss the action for want of subject matter jurisdiction. The Agency argued further that even if subject matter jurisdiction existed, the injunctive relief Abrams seeks is unwarranted.

2

Because I conclude that the Agency's jurisdictional argument has merit, I grant its motion to dismiss.

I.

Although plaintiff's petition nominally invokes the Administrative Procedure Act, she concedes that her dispute with the Agency is governed by the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 7521, which "established a comprehensive system for reviewing personnel action taken against federal employees." *United States v. Fausto*, 484 U.S. 439, 455 (1988). In crafting this system, "Congress gave exclusive jurisdiction over civil service personnel disputes to the Merit Systems Protection Board (MSPB)." *Paige v. Cisneros*, 91 F.3d 40, 42 (7th Cir. 1996). Further, "any judicial review of a final decision by the MSPB lies with the United States Court of Appeals for the Federal Circuit, and not with the district courts" or the Seventh Circuit. *Richards v. Kiernan*, 461 F.3d 880, 886 (7th Cir. 2006); 5 U.S.C. § 7701. Indeed, Congress affirmatively divested district courts of the jurisdiction they previously had over disputes of the kind at issue here. *Paige*, 91 F.3d at 43 ("by creating a comprehensive review system the CSRA implicitly repealed the jurisdiction of federal district courts over personnel actions of a type appealable to the MSPB"). Accordingly, for a district court to exercise subject matter jurisdiction over such cases based on the APA would

3

frustrate Congress's intent. *See Ass'n of Admin. Law Judges v. Colvin*, No. 13-CV-2925, 2014 WL 789074, at *2 (N.D. Ill. Feb. 26, 2014) ("[f]ederal employees are not to circumvent the CSRA's requirements by resorting to the catchall APA when challenging agency employment actions.") (citing *Grosdidier v. Chairman, Broadcasting Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009)), *aff'd*, 777 F.3d 402 (7th Cir. 2015).

All agree that under the CSRA, Abrams is entitled to have the Board review the ALJ's Initial Decision and render a final decision prior to being removed from her position. 5 U.S.C. § 7521; 5 C.F.R. § 1201.113. The parties further agree that she may then seek judicial review of the Board's decision by the Federal Circuit. 5 U.S.C. § 7701. What she decidedly may not do is bypass administrative proceedings entirely and challenge the Agency's proposed action in this court. *Paige*, 91 F.3d at 43 ("[m]any plaintiffs would prefer to begin their campaigns against federal agencies in district court rather than trudge their way through administrative proceedings—many of which are controlled by the agency being sued. The CSRA accordingly forbids this jump for all classes of federal employees...."). Yet that is the essence of her petition for injunctive relief.

None of the arguments Abrams raises in her opposition confront this fundamental jurisdictional defect. To the contrary, her cited

authorities reinforce it. For example, Abrams relies on *DeKeyser v. Zimmermann*, No. 16-CV-422-WMC, 2017 WL 3484963 (W.D. Wis. Aug. 14, 2017), but that case highlighted "the primacy of both the Merit Systems Protection Board (MSPB) and the Federal Circuit in interpretive matters under the CSRA." *Id*. at *4. Indeed, *DeKeyser* features this lengthy quote from the Seventh Circuit's decision in *Ayrault v. Pena*, 60 F.3d 346, 348 (7th Cir. 1995):

> Allowing resort to alternative remedies for complaints about matters within the statute's scope would undermine the CSRA because the statute "prescribes in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review." *United States v. Fausto*, 484 U.S. 439, 443 (1988). Lower courts, following *Fausto*, have recognized that the CSRA essentially preempted the field by "supersed[ing] preexisting remedies for all federal employees." *LeBlanc v. United States*, 50 F.3d 1025, 1030 (Fed. Cir. 1995).... As the Supreme Court stated in *Fausto*, Congress recognized the primacy of both the Merit Systems Protection Board (MSPB) and the Federal Circuit in interpretive matters under the CSRA. Delegating the task of interpreting the CSRA solely to these two bodies fosters the development "of a unitary and consistent Executive Branch position on matters involving personnel action, avoids an unnecessary layer of judicial review in lower federal courts, and encourages more consistent judicial decisions." 484 U.S. at 449 (citations omitted).

*DeKeyser*, 2017 WL 3484963, at *4 (W.D. Wis. Aug. 14, 2017) (quoting *Ayrault*, 60 F.3d at 348) (alterations and ellipses in original).

As it happens, *Ayrault* itself is particularly on point. In that case, as in this one, a federal employee "claim[ing] a right to the CSRA's comprehensive scheme of protections" filed an action

5

in federal court complaining of an adverse personnel action by the Federal Aviation Administration. *Ayrault*, 60 F.3d at 348. The district court granted summary judgment in the FAA's favor and dismissed the complaint on the ground that the plaintiff was not an "employee" within the meaning of that term as defined by the CSRA. The plaintiff appealed, and the Seventh Circuit remanded with instructions to dismiss the complaint instead for lack of jurisdiction. After examining the scheme established by the CSRA, the court concluded, "it is not our place to pass on" matters within the statute's scope. *Id*. at 349. So, too, must I refrain from passing on the merits of Abrams's claim that the personnel action the Agency announced in the November 2019 Notice runs afoul of the CSRA, as the authority to evaluate that claim rests exclusively with the MSPB and the Federal Circuit.

That Abrams seeks injunctive relief simply "to maintain the status quo" does not change the analysis. Pl.'s Reply at 7. In this connection, Abrams invokes my "incidental equitable jurisdiction" on the putative authority of *Wagner v. Taylor*, 836 F.2d 566 (D.C. Cir. 1987). But the framework governing *Wagner*—a case brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq.—is distinct from the one here, with the most salient difference being that Title VII affirmatively grants "[e]ach United States district court and each United States

6

court of a place subject to the jurisdiction of the United States...jurisdiction [over] actions brought under this subchapter." 42 U.S.C. § 2000e-5(f)(3). In the Title VII context then, it makes sense to allow district courts "to impose a temporary restraint in order to preserve the status quo pending ripening of the claim for judicial review." *Wagner*, 836 F.2d at 571. Here, by contrast, Abrams's complaint will never "ripen" into a claim reviewable by this court because the CSRA *strips* federal district courts of the jurisdiction to review her action at any juncture.

II.

For the foregoing reasons, defendant's motion to dismiss is granted.[1]

**ENTER ORDER:**

*Elaine E. Bucklo*
**Elaine E. Bucklo**
United States District Judge

Dated: July 23, 2020

---

[1] Although it is doubtful that the amicus brief proposed by the Association of Administrative Law Judges, Judicial Council No. 1 IFPTE, AFL-CIO & CLC satisfies the Seventh Circuit's standards for the filing of such briefs, see *Nat'l Org. for Women, Inc. v. Scheidler*, 223 F.3d 615, 617 (7th Cir. 2000), "[w]hether to permit a nonparty to submit a brief, as amicus curiae, is, with immaterial exceptions, a matter of judicial grace." *Id*. at 616. Because I did, in fact, consider the arguments raised by the putative amici, their motion to file is granted. But nothing in their brief persuades me that I have jurisdiction over Abrams's action.